United States District Court
Southern District of Texas
**ENTERED**
March 14, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARIA JOCHIMS, § § Plaintiff. § § VS. § HOUSTON METHODIST SUGAR § LAND HOSPITAL, § § Defendant. § | § § § § CIVIL ACTION NO. 4:19-cv-04838 § § § § § |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Houston Methodist Sugar Land Hospital's Motion for Summary Judgment. Dkt. 26. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.

## BACKGROUND

On November 18, 2013, Plaintiff Maria Jochims ("Jochims") began working for Houston Methodist Sugarland Hospital ("Houston Methodist") as an EMT-Paramedic in the Emergency Services Department. She held that role until she was terminated on April 25, 2017. Jochims reported to Rita Richards ("Richards"), the Nurse Manager.

Jochims's employment at Houston Methodist was uneventful until she had a difficult pregnancy in 2016. Around June 2016, Jochims was seen in Houston Methodist's emergency room. After that visit, Jochims complained that an unknown employee had violated her rights under the Health Insurance Portability and Accountability Act of 1996 by telling others about her pregnancy based on information learned during her emergency room visit. The Director of Emergency Services responded to the complaint and addressed the issue with hospital staff.

Notwithstanding, Jochims claims that afterward, Houston Methodist treated her differently.[1]

A short time later, on August 2, 2016, Jochims was placed on light duty after receiving work restrictions from her doctor. Several days later, on August 6, Jochims experienced a pregnancy-related blood clot that caused her admission to the hospital for treatment. As a result, Jochims was put on a leave of absence until August 25.

At Houston Methodist, leaves of absence are controlled by Houston Methodist's HR29 Leaves of Absence Policy. *See* Dkt. 26-7. Under the policy, two types of leaves of absence are applicable to this case: (1) a Family and Medical Leave of Absence ("FML"); and (2) a Medical Leave of Absence ("MLA"). In accordance with the Family Medical Leave Act ("FMLA"), an eligible employee at Houston Methodist is "grant[ed] up to 12 weeks of unpaid job protected [FML] leave commencing from day one of a qualified event (480 hours if used intermittently) during any 12-month period." *Id.* at 3. "The twelve weeks are measured in a 'rolling' 12-month period measured backward from the date an employee uses any FML leave." *Id.* If an eligible employee exhausts his or her FML leave, the employee may take an unprotected MLA. *See id.* at 4–5. Pursuant to HR29 Leaves of Absence Policy: "[L]eaves of absence of any kind" cannot exceed "six (6) months in any rolling twelve (12) month period." *Id.* at 2.

After her August 2016 leave of absence, Jochims continued to experience pregnancy-related complications, which required her to take another light-duty assignment and additional intermittent protected FML leave. As her delivery date approached, Jochims's doctor provided a note stating that she "need[ed] to be off

---

[1] Specifically, Jochims claims that she was: (1) given the cold shoulder; (2) not allowed to wear t-shirts anymore; (3) not thrown a baby shower; and (4) given a light-duty assignment at a different location. *See* Dkt. 26-20 at 17–18.

2

work from 12/7/16 until delivery."[2] Dkt. 26-9 at 2. Jochims went on leave, giving birth without complications on January 9, 2017. After the delivery, Jochims's use of leave see-sawed between unprotected MLA leave and protected FML leave. The alternating dates are immaterial here. The only date that is important is February 5, 2017—the date Jochims exhausted her protected FML leave.

On February 6, 2017, Houston Methodist posted Jochims's former position within the emergency department to be filled. *See* Dkt. 26-12 at 2. Several days later, on February 13, Gabriel Pigneri ("Pigneri") applied for the position. *See* Dkt. 29-1 at 22. Over the next few days, Richards and an interview committee interviewed Pigneri. *See id*. at 23. On February 23, after the interviews were complete, Richards instructed human resources to offer Pigneri the 11-11 FT Paramedic position "ASAP." Dkt. 27-5 at 2. Pigneri accepted the job offer on February 24.[3] *See* Dkt. 26-14. That same day, Jochims emailed Richards that she could return to work on February 28. *See* Dkt. 26-15 at 2. The email also included a note dated February 22 from Jochims's medical provider indicating that she would be able to return to work without restrictions on February 27. *See id*. at 3.

On February 27, Richards responded to Jochims's February 24 email, informing her, "[w]e have already offered a candidate the 11-11 position who has accepted." Dkt. 26-25 at 2. Richards also let Jochims know about another position with the exact same pay but a different shift:

---

[2] This was the last medical record Houston Methodist received evincing any medical issues or condition until Jochims was cleared to return to work in February 2017.

[3] Jochims notes that when Pigneri accepted the position, Pigneri did not yet possess all the certifications necessary to fill the position. *See* Dkt. 27 at 10. Houston Methodist does not dispute this fact. *See* Dkt. 29 at 4. Indeed, Houston Methodist acknowledges that Pigneri "was assigned the new start date of March 20, 2017 so he could complete a required certification." *Id*. This delayed start date does not undercut the fact that Pigneri accepted the job offer on February 24.

3

> We currently have a night 7p-7a paramedic position that is available if you would like to come back to that. If not, you have the opportunity to apply to other positions in our system within 30 days of your return to work date per policy. Please let me know as soon as possible so we can stop recruiting for that position, and start creating a schedule with you.

*Id.* Jochims declined to apply for the position because the shift did not work for her.

Having declined to accept the position with the different shift, Jochims became subject to another provision of Houston Methodist's HR29 Leaves of Absence Policy:

> If the employee returns from [a leave of absence] to find his/her position has been filled or eliminated, the employee will be referred to the Human Resources department at their business unit for instructions on next steps. . . . [T]hese employees will have thirty (30) days to look for an alternative position within Houston Methodist. If an alternative position cannot be located within thirty (30) days, the employee will be terminated.

Dkt. 26-7 at 2. Jochims failed to obtain a suitable position within 30 days. Houston Methodist gave Jochims an extension to locate and obtain an alternative position, but she failed to secure a new position within the extended time. Plaintiff was terminated effective April 25, 2017, under Houston Methodist's HR29 Policy.

Based on this sequence of events, Jochims filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex and pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and failure-to-accommodate and disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"). After the EEOC issued her a Notice of Right to Sue, Jochims filed this suit seeking to vindicate her rights.

4

Houston Methodist now moves for summary judgment on Jochims's (1) ADA disability-discrimination claim; (2) ADA failure-to-accommodate claim; and (3) Title VII retaliation claim.[4] I address each cause of action in turn.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 503 (5th Cir. 2022).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

---

[4] In the instant motion, Houston Methodist does not move for summary judgment on the sex and pregnancy discrimination claim under Title VII. Houston Methodist has filed a separate motion for summary judgment on that issue. *See* Dkt. 49.

## ANALYSIS

### A. DISABILITY-DISCRIMINATION CLAIM

Houston Methodist moves for summary judgment on Jochims's disability-discrimination claim under the ADA. To prevail, Jochims must "either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Jochims does not present direct evidence of discrimination, so I must apply the burden-shifting analysis, which requires Jochims to first establish a prima facie case of discrimination. *See id.* In the Fifth Circuit, to make a prima facie showing, Jochims must establish that: (1) she has a disability; (2) she was qualified for her job; and (3) she was "subject to an adverse employment decision on account of [her] disability." *Id.* at 695 (quotation omitted). The burden of production then shifts to Houston Methodist to articulate a legitimate, nondiscriminatory reason for Jochims's termination. *See id.* at 694. Lastly, the burden shifts back to Jochims to show that Houston Methodist's proffered reason is pretextual. *See id.*

#### 1. *Prima Facie Case*

Because the burden for establishing a prima facie case is minimal, I will assume, without deciding, that Jochims has established a prima facie case and proceed to the remaining steps of the burden-shifting framework. *See Pacovsky v. City of Booneville Miss.*, 347 F. App'x 42, 44 (5th Cir. 2009) (assuming that plaintiff had established prima facie case and moving forward with the burden-shifting analysis).

#### 2. *Legitimate Nondiscriminatory Reason*

"If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted). Houston Methodist

has put forth sufficient evidence that would allow a reasonable juror to conclude that it terminated Jochims for a legitimate, nondiscriminatory reason. Specifically, Houston Methodist has produced evidence demonstrating that after Jochims exhausted her leave, Pigneri was offered (February 23) and accepted (February 24) the 11-11 FT Paramedic position. *See* Dkt. 27-5 at 2; Dkt. 26-14 at 2–3. Houston Methodist then offered Jochims the same job in a different time slot. She declined. Thereafter, Houston Methodist provided Jochims an extended period to obtain an alternate position. However, Jochims "failed to obtain an alternate position within the Houston Methodist system despite being given an extension to find a job and was thus terminated on April 25, 2017, in accordance with Houston Methodist's HR29 Policy." Dkt. 26 at 35–36. "[V]iolating a non-discriminatory company policy is adequate grounds for termination." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004). Therefore, Houston Methodist has satisfied its burden of production, and the burden shifts back to Jochims to establish a genuine issue of material fact by showing that Houston Methodist's proffered reason is pretextual.

### 3. *Pretext*

"[Jochims] must present substantial evidence that [Houston Methodist's] legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted). This means "[Jochims] must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of the [Houston Methodist's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "In pretext cases, it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true." *Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016). "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (quotation omitted). "In

conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions." *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quotation omitted). An employee's subjective belief that she has suffered discrimination is insufficient to establish pretext. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[a] subjective belief of discrimination, however genuine, cannot be the basis of judicial relief").

To satisfy her burden, Jochims does not rely on the disparate-treatment theory. Instead, she solely attempts to demonstrate that Houston Methodist's explanation is false or unworthy of credence. In that vein, Jochims makes three arguments.

First, Jochims claims that Houston Methodist did not "fill" her position on February 24. Although Pigneri was offered the 11-11 FT Paramedic position on February 23 and verbally accepted the job on February 24, Jochims essentially claims that Pigneri could not truly accept the position on February 24 because at that time he "lacked certification in Advanced Cardiovascular Life Support ("ACLS"), which was a requirement for the EMT-Paramedic position at Methodist." Dkt. 27 at 10. Thus, in Jochims's view, Pigneri did not accept the position until after he completed the ACLS certification and reported to work on his start date, March 20, 2017.

Jochims's interpretation of Pigneri's hire date is beside the point. Houston Methodist extended Pigneri an employment offer, and he verbally accepted on February 24. While Jochims disagrees that her former position was filled at that point, Houston Methodist immediately assigned Pigneri a start date with adequate time to secure the ACLS certification. This demonstrates that Houston Methodist had a good-faith belief that Jochims's position had been filled. I will not second-guess Houston Methodist's hiring decisions. Based on the record before me, Houston Methodist's contention that it hired Pigneri on February 24 is neither false nor unworthy of credence.

8

Next, Jochims argues that she regained protected leave on March 17, 2017, a few days before Pigneri's start date. Relying on her argument that Pigneri did not fill her old job on February 24, Jochims contends that Houston Methodist arbitrarily refused to let her return to her position when she regained protected leave. This argument fails because, as explained above, the 11-11 FT Paramedic position was filled on February 24—well before Jochims regained protected leave.[5]

Lastly, Jochims argues that Houston Methodist made a "hasty" decision to hire Pigneri, which creates a fact issue precluding summary judgment. *See id*. at 22–25. To substantiate this position, Jochims claims that at least two of Richards's actions demonstrate her haste: (1) on February 23, Richards told human resources to offer Pigneri the job "ASAP"; and (2) Richards "was in such a rush" to hire Pigneri that she overlooked the fact that he did not have the necessary certifications for the position. *See id*. at 23. Jochims also claims that Richards's "failure to respond to [her] request to return to work for three full days raises a fact issue." *Id*. at 24.

I am not persuaded by these contentions. The summary judgment record is clear that Jochims's former position was posted on February 6. Pigneri applied on February 13. After going through two interviews, Houston Methodist offered Pigneri the job ten days later. These facts simply do not equate to a hastily made decision. In fact, here, the notion of "haste" is nothing more than Jochims's subjective belief, which is not sufficient to establish pretext. *See EEOC*, 47 F.3d at 1448.

***

In sum, the disability-discrimination claim fails because Jochims cannot show that Houston Methodist's legitimate, nondiscriminatory reason for her termination is pretextual.

---

[5] Jochims frames this argument almost as if she is discussing a claim brought under the FMLA. However, she has alleged no such claim.

B.     FAILURE-TO-ACCOMMODATE CLAIM

"A failure-to-accommodate claim [under the ADA] requires a showing that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021) (quotation omitted). "An employee's request for an accommodation triggers an obligation on behalf of the employer to engage with good faith in an interactive process to identify an appropriate accommodation." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 318 (5th Cir. 2016). However, only "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee" does that employer violate the ADA. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). *See also Salem v. Houston Methodist Hosp.*, No. CIV.A. 4:14-1802, 2015 WL 6618471, at *8 (S.D. Tex. Oct. 30, 2015) ("[F]ailure to participate in an interactive process does not—in and of itself—constitute a violation of the ADA.").

Houston Methodist argues that Jochims's failure-to-accommodate claim fails for two reasons: (1) Jochims was not disabled when she purportedly requested the relevant accommodation; and (2) Jochims's alleged disability and corresponding limitations were not known by Houston Methodist. I concur with Houston Methodist's first argument. Jochims has failed to establish that she was disabled, an essential element of a failure-to-accommodate claim.

Jochims describes her disability and limitations as follows: "[Jochims] requested the reasonable accommodation of additional time after she gave birth in direct conversations with her Supervisor Rita Richards. In requesting this accommodation, Ms. Jochims specifically identified an infection, recovery from childbirth and a cardiac condition as the reasons for additional time." Dkt. 27 at 28.

10

This description of the purported disability and its limitations is problematic. Houston Methodist has presented summary judgment evidence that on February 5, Jochims presented to Houston Methodist West Hospital for the infection and cardiac condition that she now claims warranted accommodations. *See* Dkt. 26-26 at 3, Dkt. 26-27 at 3. Doctors prescribed various medications to treat the infections. *See* Dkt. 26-27 at 3. Importantly, Jochims testified that she requested accommodations from Richards "at or near . . . February 28, 2017." Dkt. 26-20 at 47.

Notwithstanding the infection and cardiac condition, Jochims's medical provider released her to return to work without restrictions on February 27, meaning the ailments purportedly necessitating an accommodation on February 5 ended on February 27—a mere 22 days later. *See* Dkt. 26-15 at 3. This is sufficient evidence that Jochims was not disabled because "[a] temporary, nonchronic impairment of short duration, with little or no long-term or permanent impact, is usually not a disability under the ADA."[6] *Strife v. Westex Sec. Servs., Inc.*, No. CV H-18-3513, 2019 WL 3321741, at *3 (S.D. Tex. July 24, 2019). *See also McKenzie-Nevolas v. Deaconess Holdings LLC*, No. CIV-12-570-D, 2014 WL 518086, at *5 (W.D. Okla. Feb. 7, 2014) ("Because Plaintiff's infection (impairment) was limited to one part of her body and was not chronic but temporary and of short duration [that is, two to three weeks at most], the Court finds that there is no genuine issue of material fact regarding disability, and that Plaintiff did not have a disability which substantially limited one or more major life activities."). Jochims's failure-to-accommodate claim should be dismissed as a matter of law.

---

[6] A temporary impairment may be covered only if it is sufficiently severe as to substantially limit a major life activity beyond the short-term effects. *See Clark v. Boyd Tunica, Inc.*, No. 3:14-CV-204-MPM-JMV, 2016 WL 853529, at *4 (N.D. Miss. Mar. 1, 2016), *aff'd*, 665 F. App'x 367 (5th Cir. 2016).

## C. TITLE VII RETALIATION

Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice made unlawful by Title VII. *See* 42 U.S.C. § 2000e–3(a). The prima facie elements for a retaliation claim require a showing that "(1) [Jochims] engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407–08 (5th Cir. 1999). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quotation omitted). "Title VII does not protect opposition to all forms of unscrupulous conduct." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010). "Title VII protects only opposition to discrimination based on 'race, color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000e–2(a)(1)). The familiar *McDonnell-Douglas* burden-shifting framework applies to Title VII retaliation claims. *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

Jochims alleges that Houston Methodist retaliated because her attorney filed a litigation-hold letter on October 28, 2016. *See* Dkt. 27 at 32–33. As pointed out by Houston Methodist, the litigation-hold letter only "vaguely references 'claims for disability discrimination, violation of the FMLA and/or Chapter 21 of the Texas Labor Code.'" Dkt. 29 at 13 (quoting Dkt. 27-2 at 3). Notably absent in the litigation-hold letter is any reference to or allegation of discrimination based on race, color, religion, sex, or national origin. In other words, the litigation-hold letter does not oppose any practice made unlawful by Title VII. The Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (collecting cases).

12

Additionally, for a Title VII retaliation claim, a plaintiff must show that the protected activity was a "but-for" cause of the adverse action, rather than a "motivating factor" as is required for a Title VII discrimination claim. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 436 (5th Cir. 2022). "[N]o liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct." *Id.* at 437. Even if Jochims's litigation-hold letter constitutes protected activity, she has not pointed to evidence showing a causal connection between the litigation-hold letter and her termination, let alone that the litigation-hold letter was the "but-for" cause of her termination.

Thus, Jochims's retaliation claim also fails.[7]

## CONCLUSION

For the reasons explained above, Defendant Houston Methodist Sugar Land Hospital's Motion for Summary Judgment (Dkt. 26) should be **GRANTED**. Jochims's claims for disability discrimination, failure -to-accommodate, and Title VII retaliation should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

[7] Jochims's Title VII claim also fails because she cannot demonstrate pretext. The foundation of Jochims's pretext argument is that Houston Methodist did not fill her position on February 24. *See* Dkt. 27 at 34–35. Jochims again attempts to argue that I should infer that this "lie," and various facts flowing from the "lie," evince pretext. As discussed with respect to the disability-discrimination claim, Jochims is mistaken. Houston Methodist filled her former position on February 24. Thus, there is no "lie" on which to stack inferences. Accordingly, Jochims cannot show that Houston Methodist's legitimate, nondiscriminatory reason for her termination is pretextual.

SIGNED this 14th day of March 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE