United States District Court
Southern District of Texas
**ENTERED**
April 20, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MARIA JOCHIMS, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:19-cv-04838 |
| § | |
| HOUSTON METHODIST SUGAR § | |
| LAND HOSPITAL, § | |
| § | |
| Defendant. § | |

### MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Houston Methodist Sugar Land Hospital's Motion for Summary Judgment on Plaintiff's Sex and Pregnancy Discrimination Claim. Dkt. 49. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **GRANTED**.

### BACKGROUND

On November 18, 2013, Plaintiff Maria Jochims ("Jochims") began working for Houston Methodist Sugarland Hospital ("Houston Methodist") as an EMT-Paramedic in the Emergency Services Department. She held that role until she was terminated on April 25, 2017. Jochims reported to Rita Richards ("Richards"), the Nurse Manager.

Jochims's employment at Houston Methodist was uneventful until she had a difficult pregnancy in 2016. Around June 2016, Jochims was seen in Houston Methodist's emergency room. After that visit, Jochims complained that an unknown employee had violated her rights under the Health Insurance Portability and Accountability Act of 1996 by telling others about her pregnancy based on information learned during her emergency room visit. The Director of Emergency Services responded to the complaint and addressed the issue with hospital staff.

Notwithstanding, Jochims claims that afterward, Houston Methodist treated her differently.[2]

A short time later, on August 2, 2016, Jochims was placed on light duty after receiving work restrictions from her doctor. Several days later, on August 6, Jochims experienced a pregnancy-related blood clot that caused her admission to the hospital for treatment. As a result, Jochims was put on a leave of absence until August 25.

At Houston Methodist, leaves of absence are controlled by Houston Methodist's HR29 Leaves of Absence Policy. *See* Dkt. 49-7. Under the policy, two types of leaves of absence are applicable to this case: (1) a Family and Medical Leave of Absence ("FML"); and (2) a Medical Leave of Absence ("MLA"). In accordance with the Family Medical Leave Act ("FMLA"), an eligible employee at Houston Methodist is "grant[ed] up to 12 weeks of unpaid job protected [FML] leave commencing from day one of a qualified event (480 hours if used intermittently) during any 12-month period." *Id.* at 3. "The twelve weeks are measured in a 'rolling' 12-month period measured backward from the date an employee uses any FML leave." *Id.* If an eligible employee exhausts his or her FML leave, the employee may take an unprotected MLA. *See id.* at 4–5. Pursuant to HR29 Leaves of Absence Policy: "[L]eaves of absence of any kind" cannot exceed "six (6) months in any rolling twelve (12) month period." *Id.* at 2.

After her August 2016 leave of absence, Jochims continued to experience pregnancy-related complications, which required her to take another light-duty assignment and additional intermittent protected FML leave. As her delivery date approached, Jochims's doctor provided a note stating that she "need[ed] to be off

---

[2] Specifically, Jochims claims that she was: (1) given the cold shoulder; (2) not allowed to wear t-shirts anymore; (3) not thrown a baby shower; and (4) given a light-duty assignment at a different location. *See* Dkt. 49-20 at 17–18.

2

work from 12/7/16 until delivery."[3] Dkt. 49-9 at 2. Jochims went on leave, giving birth without complications on January 9, 2017. After the delivery, Jochims's use of leave see-sawed between unprotected MLA leave and protected FML leave. The alternating dates are immaterial here. The only date that is important is February 5, 2017—the date Jochims exhausted her protected FML leave.

On February 6, 2017, Houston Methodist posted Jochims's former position within the Emergency Department to be filled. *See* Dkt. 49-12 at 2. Several days later, on February 13, Gabriel Pigneri ("Pigneri") applied for the position. Over the next few days, Richards and an interview committee interviewed Pigneri. On February 23, after the interviews were complete, Richards instructed human resources to offer Pigneri the 11-11 FT Paramedic position "ASAP." Dkt. 49-13 at 3. Pigneri accepted the job offer on February 24.[4] *See* Dkt. 49-14. That same day, Jochims emailed Richards that she could return to work on February 28. *See* Dkt. 49-15 at 2. The email also included a note dated February 22 from Jochims's medical provider indicating that she would be able to return to work without restrictions on February 27. *See id.* at 3.

On February 27, Richards responded to Jochims's February 24 email, informing her, "[w]e have already offered a candidate the 11-11 position who has accepted." Dkt. 49-25 at 2. Richards also let Jochims know about another position with the exact same pay but a different shift:

> We currently have a night 7p-7a paramedic position that is available if you would like to come back to that. If not, you have the opportunity to apply to other positions in our system within 30 days of your return to work date per policy. Please let me know as soon as possible so we can stop recruiting for that position, and start creating a schedule with you.

---

[3] This was the last medical record Houston Methodist received evincing any medical issues or condition until Jochims was cleared to return to work in February 2017.

[4] Jochims notes that when Pigneri accepted the position, Pigneri did not yet possess all the certifications necessary to fill the position. Houston Methodist does not dispute this fact. This delayed start date does not undercut the fact that Pigneri accepted the job offer on February 24.

3

*Id.* Jochims declined to apply for the position because the shift did not work for her.

Having declined to accept the position with the different shift, Jochims became subject to another provision of Houston Methodist's HR29 Leaves of Absence Policy:

> If the employee returns from [a leave of absence] to find his/her position has been filled or eliminated, the employee will be referred to the Human Resources department at their business unit for instructions on next steps. . . . [T]hese employees will have thirty (30) days to look for an alternative position within Houston Methodist. If an alternative position cannot be located within thirty (30) days, the employee will be terminated.

Dkt. 49-7 at 2. Jochims failed to obtain a suitable position within 30 days. Houston Methodist gave Jochims an extension to locate and obtain an alternative position, but she failed to secure a new position within the extended time. Plaintiff was terminated effective April 25, 2017, under Houston Methodist's HR29 Policy.

Based on this sequence of events, Jochims filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging sex and pregnancy discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and failure-to-accommodate and disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"). After the EEOC issued her a Notice of Right to Sue, Jochims filed this suit seeking to vindicate her rights.

Houston Methodist previously moved to dismiss Jochims's (1) ADA disability-discrimination claim; (2) ADA failure-to-accommodate claim; and (3) Title VII retaliation claim. On March 14, 2022, I issued a Memorandum and Recommendation, recommending dismissal of those claims. *See Jochims v. Houston Methodist Sugar Land Hosp.*, No. 4:19-CV-04838, 2022 WL 772966, at *1 (S.D. Tex. Mar. 14, 2022). On March 29, 2022, District Judge George C. Hanks, Jr. adopted my Memorandum and Recommendation in its entirety. *See* Dkt. 53.

4

Houston Methodist now moves for summary judgment on the sex and pregnancy discrimination claim under Title VII.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit, and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Miranda v. Navistar, Inc.*, 23 F.4th 500, 503 (5th Cir. 2022).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

**A.    SEX AND PREGNANCY DISCRIMINATION CLAIM**

Title VII makes it unlawful for an employer to discharge an employee because of her sex, which includes discrimination because of pregnancy. *See* 42 U.S.C. § 2000e-2(a); *id.* § 2000e(k) (including discrimination "because of or on the basis of pregnancy," per the Pregnancy Discrimination Act). *See also Appel v. Inspire Pharms., Inc.*, 428 F. App'x 279, 281 (5th Cir. 2011) ("Discrimination on

5

the basis of sex includes discrimination on the basis of pregnancy." (quotation omitted)). A sex and pregnancy discrimination claim is analyzed in the same manner as other Title VII discrimination claims. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016). The familiar *McDonnell Douglas* burden-shifting framework applies to Title VII discrimination claims. *See Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 601 (5th Cir. 2015).

Under the *McDonnell Douglas* framework, Jochims must first establish a *prima facie* case of discrimination. *See id.* Then Houston Methodist must provide a legitimate, nondiscriminatory reason for Jochims's termination. *See id.* If Houston Methodist gives an adequate, nondiscriminatory reason for Jochims's termination, the burden shifts back to Jochims who "must then prove, by a preponderance of the evidence, that the proffered reason was mere pretext for discrimination." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

"To carry the initial burden on her claim of sex discrimination based on pregnancy, plaintiff must establish a prima facie case by showing that: (1) she is a member of a protected group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) that other similarly situated employees were more favorably treated, or that she was replaced by a person who was not a member of her protected class." *Gerdin v. CEVA Freight, L.L.C.*, 908 F. Supp. 2d 821, 827 (S.D. Tex. 2012).

### 1. *Prima Facie Case*

Because the burden for establishing a *prima facie* case is minimal, I will assume, without deciding, that Jochims has established a *prima facie* case and proceed to the remaining steps of the burden-shifting framework. *See Phillips v. Credit Lyonnais*, No. CIV.A.3:00CV1638-G, 2002 WL 1575412, at \*6 (N.D. Tex. July 16, 2002) ("The court will assume, for the purposes of this motion, however, that [Plaintiff] has established a *prima fac*ie case of pregnancy discrimination."). The question then becomes whether Houston Methodist has offered a legitimate,

nondiscriminatory reason for Jochims's discharge and whether Jochims can satisfy her pretext burden.

### 2. *Legitimate Nondiscriminatory Reason*

"If the employer produces any evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action, then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) (quotation omitted). Houston Methodist has put forth sufficient evidence that would allow a reasonable juror to conclude that it terminated Jochims for a legitimate, nondiscriminatory reason. Specifically, Houston Methodist has produced evidence demonstrating that after Jochims exhausted her leave, Pigneri was offered (February 23) and accepted (February 24) the 11-11 FT Paramedic position. Houston Methodist then offered Jochims the same job in a different time slot. She declined. Thereafter, Houston Methodist provided Jochims an extended period to obtain an alternate position. However, Jochims "failed to obtain an alternate position within the Houston Methodist system despite being given an extension beyond the thirty (30) days to find a job and was thus terminated on April 25, 2017, in accordance with Houston Methodist's HR29 Policy." Dkt. 49 at 16. "[V]iolating a non-discriminatory company policy is adequate grounds for termination." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004). Therefore, Houston Methodist has satisfied its burden of production, and the burden shifts back to Jochims to establish a genuine issue of material fact by showing that Houston Methodist's proffered reason is pretextual.

### 3. *Pretext*[5]

"[Jochims] must present substantial evidence that [Houston Methodist's] legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v.*

---

[5] This is virtually the same analysis I used to dismiss Jochims's disability discrimination claim. *See Jochims*, 2022 WL 772966, at *4–5.

*PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016) (quotation omitted). This means "[Jochims] must substantiate h[er] claim of pretext through evidence demonstrating that discrimination lay at the heart of [Houston Methodist's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "In pretext cases, it is not enough that the [employer] was wrong about the underlying facts that motivated the adverse employment action. The only question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true." *Lucas v. T-Mobile USA, Inc.*, 217 F. Supp. 3d 951, 957 (S.D. Tex. 2016). "Pretext is established either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Delaval*, 824 F.3d at 480 (quotation omitted). "In conducting a pretext analysis, the court does not engage in second-guessing of an employer's business decisions." *Roberson-King v. La. Workforce Comm'n*, 904 F.3d 377, 381 (5th Cir. 2018) (quotation omitted). An employee's subjective belief that she has suffered discrimination is insufficient to establish pretext. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995) ("[a] subjective belief of discrimination, however genuine, cannot be the basis of judicial relief").

To satisfy her burden, Jochims attempts to demonstrate that Houston Methodist's explanation is false or unworthy of credence. In that vein, Jochims makes three arguments.

First, Jochims claims that Houston Methodist did not "fill" her position on February 24. Although Pigneri was offered the 11-11 FT Paramedic position on February 23 and verbally accepted the job on February 24, Jochims essentially claims that Pigneri could not truly accept the position on February 24 because at that time he lacked certification in Advanced Cardiovascular Life Support ("ACLS"), which was a requirement for the EMT-Paramedic position at Methodist. Dkt. 51 at 13–16. Thus, in Jochims's view, Pigneri did not accept the position until after he completed the ACLS certification and reported to work on his start date, March 20, 2017.

8

Jochims's interpretation of Pigneri's hire date is beside the point. Houston Methodist extended Pigneri an employment offer, and he verbally accepted on February 24. While Jochims disagrees that her former position was filled at that point, Houston Methodist immediately assigned Pigneri a start date with adequate time to secure the ACLS certification. This demonstrates that Houston Methodist had a good-faith belief that Jochims's position had been filled. I will not second-guess Houston Methodist's hiring decisions. Based on the record before me, Houston Methodist's contention that it hired Pigneri on February 24 is neither false nor unworthy of credence.

Next, Jochims argues that she regained protected leave on March 17, 2017, a few days before Pigneri's start date. Relying on her argument that Pigneri did not fill her old job on February 24, Jochims contends that Houston Methodist arbitrarily refused to let her return to her position when she regained protected leave. *See id.* at 17–19. This argument fails because, as explained above, the 11-11 FT Paramedic position was filled on February 24—well before Jochims regained protected leave.[6]

Lastly, Jochims argues that Houston Methodist made a "hasty" decision to hire Pigneri, which creates a fact issue precluding summary judgment. *See id.* at 19–23. To substantiate this position, Jochims claims that at least two of Richards's actions demonstrate her haste: (1) on February 23, Richards told human resources to offer Pigneri the job "ASAP"; and (2) Richards was in such a rush to hire Pigneri that she overlooked the fact that he did not have the necessary certifications for the position. Jochims also claims that Richards's failure to respond to her request to return to work for three full days raises a fact issue. Similarly, Jochims contends that the delay between Pigneri's hire date (February 24) and start date (March 20)

---

[6] Jochims frames this argument almost as if she is discussing a claim brought under the FMLA. However, she has alleged no such claim.

creates a fact issue because the delay is inconsistent with Houston Methodist's claim that increasing work demands necessitated the hire. *See id.*

I am unpersuaded by these contentions. The summary judgment record is clear that Jochims's former position was posted on February 6. Pigneri applied on February 13. After going through two interviews, Houston Methodist offered Pigneri the job ten days later. These facts simply do not equate to a hastily made decision. In fact, here, the notion of "haste" is nothing more than Jochims's subjective belief, which is insufficient to establish pretext. *See La. Office of Cmty. Servs.*, 47 F.3d at 1448. Moreover, with respect to Houston Methodist's statement concerning increasing work demands, Jochims mischaracterizes Houston Methodist's position. Houston Methodist specifically stated: "Because Houston Methodist faced uncertainty about when, if ever [Jochims] would return, as well as increasing work demands of the Emergency Department, Houston Methodist posted [Jochims's] position on February 6, 2021." Dkt. 49 at 16 (cleaned up). This statement speaks to the circumstances that caused Houston Methodist to post the position. Jochims has neither explained how this renders Houston Methodist's legitimate, nondiscriminatory reason false or unworthy of credence, nor has she explained how this demonstrates that discrimination lay at the heart of Houston Methodist's decision to terminate her employment.

***

In sum, the sex and pregnancy discrimination claim fails because Jochims cannot show that Houston Methodist's legitimate, nondiscriminatory reason for her termination is pretextual.

## CONCLUSION

For the reasons explained above, Defendant Houston Methodist Sugar Land Hospital's Motion for Summary Judgment on Plaintiff's Sex and Pregnancy Discrimination Claim (Dkt. 49) should be **GRANTED**. Jochims's claim for sex and pregnancy discrimination should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 20th day of April 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE